# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

---

N° 10-CV-226 (JFB)(WDW)

---

BONNIE ABER-SHUKOFSKY, ET AL.,

Plaintiffs,

VERSUS

JPMORGAN CHASE & CO., ET AL.,

Defendants.

---

**MEMORANDUM AND ORDER**
December 15, 2010

---

JOSEPH F. BIANCO, District Judge:

Plaintiffs Bonnie Aber-Shukofsky ("Shukofsky"), Dayna Murray ("Murray"), Joyce Patrick ("Patrick"), Paula Klabacha ("Klabacha"), Michelle Holmlund ("Holmlund") and Victoria Markee ("Markee") (collectively "plaintiffs") brought this putative class action on behalf of themselves, and on behalf of individuals similarly situated, against defendants JPMorgan Chase & Co. and JPMorgan Chase Bank, N.A. (collectively "Chase" or "defendants"), as successors in interest to Washington Mutual, Inc. ("WaMu"), for alleged violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, and related state wage and labor laws in New York, California, Washington and Pennsylvania.[1]  According to the second amended complaint, plaintiffs, six former underwriter employees of WaMu, allege that they and similarly situated employees of WaMu were denied wages and overtime pay in violation of the FLSA and the above-referenced state laws by WaMu and defendants, as successors in interest.

Presently before the Court is defendants' motion to dismiss the second amended complaint under Rule 12(b)(1) of the Federal Rules of Civil Procedure.  First, defendants

---

[1] Plaintiffs filed this lawsuit as a class action under Rule 23 of the Federal Rules of Civil Procedure with respect to their claims under New York, California, Washington and Pennsylvania state law, but no motion for Rule 23 class certification has yet been made by plaintiffs at the time of the opinion.

contend that the Court lacks jurisdiction over plaintiffs' claims because they relate to alleged acts or omissions of WaMu before it failed and, thus, plaintiffs' claims must be brought under the mandatory administrative process required under the Financial Institutions Reform, Recovery and Enforcement Act ("FIRREA"). Furthermore, defendants contend that because plaintiffs have failed to invoke and exhaust their administrative remedies under FIRREA, plaintiffs' claims are barred. Second, in the alternative, defendants contend that the Court should dismiss the second amended complaint and compel arbitration because WaMu's binding arbitration policy and plaintiffs' signed arbitration agreements covered plaintiffs' employment and the claims in this suit.

For the reasons set forth below, the Court grants defendants' motion for lack of subject matter jurisdiction. Specifically, the Court concludes the following: (1) plaintiffs' claims directly relate to acts or omissions of WaMu as a failed institution under FIRREA; and (2) the Court lacks jurisdiction over such claims because plaintiffs failed to invoke and exhaust their administrative remedies provided by FIRREA. Accordingly, defendants' motion to dismiss is granted, and plaintiffs' second amended complaint is dismissed in its entirety.[2]

I. BACKGROUND

The following facts are taken from the second Amended Complaint ("Am. Compl.") and are not findings of fact by the Court, but rather are assumed to be true for the purpose of deciding this motion.

A. Facts

From September 2000 until June 2008, plaintiffs worked at WaMu in various underwriting positions and in various locations. (Am. Compl. ¶¶ 10, 14, 18, 22, 26, 30.) Plaintiffs allege that WaMu and defendants, as successors in interest, improperly classified them as exempt, and failed to properly pay underwriters for all hours worked and overtime compensation under the FLSA and state wage and hour laws in New York, California, Washington and Pennsylvania. (*Id.* ¶¶ 1-8, 92-156.)

Shukofsky and Murray worked for WaMu in the State of New York, where they also reside. (*Id.* ¶¶ 3, 9, 13.) Shukofsky was employed by WaMu from May 2003 through November 2004 and again from July 2005 through December 2007. (*Id.* ¶ 10.) Murray was employed by WaMu from June 2005 through February 20, 2008. (*Id.* ¶ 14.)

Patrick and Klabacha worked for WaMu in the State of California, where they also reside. (*Id.* ¶ 4, 17, 21.) Patrick was employed by WaMu from October 2003 through June 30, 2008. (*Id.* ¶ 18.) Klabacha was employed by WaMu from December 1, 2006 through March 2007. (*Id.* ¶ 22.) Holmlund worked for WaMu in the State of Washington, where she also resides. (*Id.* ¶ 5, 25.) Holmlund was employed by WaMu from January 2001 through June 2008. (*Id.* ¶ 26.) Markee worked for WaMu in the State of Pennsylvania, where she is also a resident. (*Id.* ¶ 6, 29.) Markee was employed by WaMu from September 2000 through May 2008. (*Id.* ¶ 30.)

---

[2] The Court, therefore, need not address defendants' argument that plaintiffs' claims are subject to binding arbitration, or plaintiffs' request to stay this litigation pending arbitration, as the Court's ruling on defendants' motion renders both of those issues moot.

On September 25, 2008, the Office of Thrift Supervision seized WaMu and placed it into receivership with the FDIC. (*Id.* ¶ 35.) That same day, the FDIC, as receiver of WaMu, sold to defendants certain of WaMu's assets and liabilities. (*Id.*)

B. Procedural History

On January 20, 2010, plaintiffs Shukofsky and Murray filed the instant action. On March 19, 2010, plaintiffs filed an amended complaint. On April 27, 2010 plaintiffs filed a second amended complaint. On July 9, 2010, defendants moved to dismiss as to all claims. Plaintiffs filed their opposition on August 9, 2010. Defendants filed a reply on August 27, 2010. Oral argument was held on October 15, 2010. This matter is fully submitted and the Court has considered all the submissions of the parties.

II. STANDARD OF REVIEW

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States,* 201 F.3d 110, 113 (2d Cir. 2000). In reviewing a motion to dismiss under Rule 12(b)(1), the court "must accept as true all material factual allegations in the complaint, but [it is] not to draw inferences from the complaint favorable to plaintiffs." *J.S. ex rel. N.S. v. Attica Cent. Schs.,* 386 F.3d 107, 110 (2d Cir. 2004) (citation omitted). Moreover, the court "may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional issue, but [it] may not rely on conclusory or hearsay statements contained in the affidavits." *Id.* (citations omitted). "The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Aurecchione v. Schoolman Transp. Sys., Inc.,* 426 F.3d 635, 638 (2d Cir. 2005). The Court may also raise the issue of subject matter jurisdiction at any time *sua sponte*. *See, e.g., McGinty v. New York,* 251 F.3d 84, 90 (2d Cir. 2001) ("Whether a federal court has subject matter jurisdiction is a question that may be raised at any time ... by the court *sua sponte.*") (internal quotation marks omitted).

III. DISCUSSION

Defendants move to dismiss plaintiffs' second amended complaint as barred by FIRREA. Defendants contend that plaintiffs' claims relate to alleged acts or omissions of WaMu and the Court lacks jurisdiction over such claims because plaintiffs failed to invoke and exhaust their administrative remedies provided by FIRREA.

A. Overview of FIRREA

FIRREA provides an administrative review process for all claims asserted against assets of a failed institution. If the financial institution has failed, pursuant to 12 U.S.C. §§ 1821(d)(3)-(5), subsequent claims must be presented first to the FDIC for an administrative determination on whether they should be paid. Under 12 U.S.C. § 1821(d)(3)(B), and upon its appointment as receiver, the FDIC is required to publish notice that the failed institution's creditors must file claims with the FDIC by a date not less than ninety days after the date of publication. Once a claim is filed, the FDIC then has to render a determination within 180 days. 12 U.S.C. § 1821(d)(5)(A)(I). Section 1821(d)(6) of FIRREA governs appeals of the FDIC's determinations as receiver. Claimants have sixty days after the 180 day claim determination period or sixty days after a claim is disallowed, to request an administrative review of that decision, or to bring suit within

3

the appropriate federal district court. *See* 12 U.S.C. § 1821(d)(6)(A).

The administrative review process provided by FIRREA is a prerequisite to judicial review. Until such time as the claim is disallowed by the FDIC, section 1821(d)(13) expressly revokes the jurisdiction of all federal courts to decide claims against the assets of a failed institution. Section 1821(d)(13)(D) provides in full:

> Except as otherwise provided in this subsection, no Court shall have jurisdiction over-
>
> (I) any claim or action for payment from, or any action seeking determination of rights with respect to, the assets of any depository institution for which the Corporation has been appointed receiver, including assets which the Corporation may acquire from itself as such receiver; or
>
> (ii) *any claim relating to any act or omission of such institution* or the Corporation as receiver.

12 U.S.C. § 1821(d)(13)(D) (emphasis added).[3]

Accordingly, if a claimant fails to comply with the statutory time limitations, "the claim shall be deemed to be disallowed . . . , such disallowance shall be final, and the claimant shall have no further rights or remedies with respect to such claim." 12 U.S.C. § 1821(d)(6)(B)(ii).

B. Application

For the reasons set forth below, the Court finds that plaintiffs' claims, under 12 U.S.C. § 1821(d)(13)(D)(ii), constitute "claim[s] relating to any act or omission of such [failed] institution," and plaintiffs failed to invoke and exhaust their administrative remedies provided by FIRREA. Thus, this Court lacks jurisdiction over plaintiffs' claims.

Given FIRREA's clear language, the Second Circuit has consistently held that courts lack subject matter jurisdiction to hear a claim against a failed bank taken into receivership by the FDIC unless the plaintiff has exhausted the administrative claims process. *See Bank of New York v. First Millenium Inc.*, 607 F.3d 905, 920-21 (2d Cir. 2010); *Carlyle Towers Condominimium Ass'n, Inc. v. FDIC,* 170 F.3d 301, 307 (2d Cir. 1999); *Caires v. JP Morgan Chase Bank,* No. 3:09-cv-02142 (VLB), 2010 WL 3941841, at *5 (D. Conn. 2010) ("The Second Circuit has held that section 1821(d)(13)(D), when read in conjunction with the rest of section 1821(d), creates a requirement that all claims be presented to the FDIC before a claimant may seek judicial review." (citations and quotation marks omitted)); *see also Resolution Trust Corp. v. Elman,* 949 F.2d 624, 627 (2d Cir. 1991) ("[T]he statute means just what it says, and accordingly. . .a claimant must first present its case. . .under the administrative procedure erected by FIRREA before seeking relief in the federal courts.")

Here, in papers and at oral argument, plaintiffs concede that pursuant to 12 U.S.C. § 1821(d)(13)(D)(ii), plaintiffs' claims relate to the acts or omissions of WaMu and that

---

[3] The phrase "[e]xcept as otherwise provided in this subsection" refers to a provision that allows jurisdiction after the administrative claims process has been completed. *See* 12 U.S.C. §§ 1821(d)(6)(A).

4

plaintiffs failed to comply with the administrative claims process provided by FIRREA. Even without plaintiffs' admission, the Court concludes that plaintiffs' claims only relate to acts and omissions of WaMu as a failed institution under FIRREA. According to the second amended complaint, only WaMu is alleged to have violated the FLSA and state wage and hour laws and each specific allegation of misconduct occurred during the plaintiffs' employment with WaMu, well before WaMu's failure and seizure on September 25, 2008, the FDIC's appointment as receiver, and WaMu's acquisition by defendants. (Am. Compl. ¶¶ 1-8, 92-156.) Accordingly, the Court holds, pursuant to the plain meaning of FIRREA, that it lacks jurisdiction over plaintiffs' claims and plaintiffs "have no further rights or remedies with respect to such claim[s]," 12 U.S.C. § 1821(d)(6)(B)(ii). Thus, plaintiffs' claims are barred by FIRREA.[4] *See Estate of Barbara Pew v. Cardarelli,* 527 F.3d 25, 30 (2d Cir. 2008) ("We first look to the statute's plain meaning; if the language is unambiguous, we will not look farther.") (citations and quotation marks omitted).

Notwithstanding the plain language, plaintiffs argue that their claims are not bound by FIRREA and, thus, the statute's exhaustion requirement and jurisdictional bar do not apply. In particular, plaintiffs argue that the requirement does not apply because FIRREA is designed to protect the FDIC, which is no longer operating as WaMu's receiver, and FIRREA's protections do not extend to defendants because defendants accepted certain assets and liabilities as WaMu's successors in interest. (Pls.' Resp. at 3-6.)[5] However, as noted above, Section 1821(d)((13)(D)(ii) refers to "*any claim relating to any act or omission*" of a failed institution and does not make its application contingent upon whom the claim is against. (emphasis added). Thus, the statutory provision, by its plain language, applies with equal force to a successor in interest to the failed institution. In short, given the plain language of FIRREA, the Court finds that plaintiffs cannot evade FIRREA's mandatory exhaustion requirement simply by asserting claims against defendants, as third-party purchasers of the failed bank's assets, for acts or omissions that relate to WaMu.

Although the Second Circuit has never addressed this specific issue regarding FIRREA, the Sixth Circuit reached the same conclusion as this Court in *Village of Oakwood v. State Bank & Trust Co.*, 539 F.3d

---

[4] Plaintiffs do not dispute that the FDIC published notice that plaintiffs must file claims with the FDIC by December 30, 2008, a date not less than ninety days after the date of publication as statutorily required under 12 U.S.C. § 1821(d)(3)(B), and, thus plaintiffs' claims are untimely under FIRREA.

[5] Plaintiffs cited *FDIC v. McFarland*, 243 F.3d 876 (5th Cir. 2001), to support their argument that FIRREA does not apply. However, *McFarland* is inapplicable because it did not involve the FIRREA section at issue here–namely, § 1821(d)(13)(D)(ii), which addresses claims relating to any act or omission of a failed institution. Instead, in affirming that FIRREA does not prevent Louisiana law from recognizing either the FDIC's obligation to reinscribe mortgages or the loss of ranking suffered by the FDIC if it fails to meet this obligation, the *McFarland* court, among other arguments, addressed § 1821(d)(13)(C) of FIRREA, which states that "no attachment or execution may issue by any court upon assets in the possession of the receiver" and looked to the provision that relates to assets for which the FDIC is acting as receiver, § 1821(d)(13)(D)(I), not § 1821(d)(13)(D)(ii). *See FDIC v. McFarland*, 243 F. 3d at 887 n.42 (5th Cir. 2001).

373 (6th Cir. 2008). In *Village of Oakwood,* as in the instant action, plaintiffs argued that FIRREA did not apply because they had brought claims only against the assuming bank. Specifically, plaintiffs alleged that the assuming bank was the successor to the failed bank and that it had aided and abetted the FDIC in its alleged breach of fiduciary duty to the plaintiffs. The FDIC intervened, and both FDIC and the assuming bank challenged the court's jurisdiction because the plaintiffs had failed to exhaust their administrative remedies. *Vill. of Oakwood v. State Bank & Trust Co.,* 519 F. Supp. 2d 730, 734-35 (N.D. Ohio 2007), *aff'd,* 539 F.3d 373 (6th Cir. 2008). The Sixth Circuit affirmed the district court's grant of summary judgment holding that plaintiffs' claims were barred because FIRREA required administrative claims to be filed with the FDIC, which the plaintiffs had not done, and plaintiffs could not evade FIRREA's jurisdictional bar by asserting claims against the assuming bank. *See Vill. of Oakwood*, 539 F.3d at 386. This Court finds the Sixth Circuit's analysis in *Village of Oakwood* to be persuasive.

Plaintiffs attempt to distinguish *Village of Oakwood* by arguing that the successor bank in that case did not contractually assume its predecessor's liabilities, and plaintiffs' claims against the successor bank were an attempt to indirectly attack the FDIC whereas, here, the FDIC is no longer acting as receiver. (Pls.' Resp. at 4-5.) Plaintiffs' argument is without merit. Although plaintiffs accurately characterize that the claims against the successor bank in *Village of Oakwood* were related to acts or omissions of the FDIC, it is a distinction without legal relevance. The clear defect in plaintiffs' argument is that there is no dispute that *all* of their claims against defendants "relate" to "acts or omissions" of WaMu as a failed institution under FIRREA.

In short, 12 U.S.C. § 1821(d)(13)(D) expressly provides that "no court shall have jurisdiction over. . .any claim relating to any act or omission of such [failed] institution *or* the Corporation as receiver." (emphasis added). Thus, it is irrelevant whether the FDIC is still acting as receiver or whether plaintiffs' claims relate to acts or omissions of the FDIC instead of the failed institution. Furthermore, *Village of Oakwood* stands for the proposition that plaintiffs cannot claim successor liability and circumvent FIRREA's jurisdictional bar and mandatory exhaustion requirement simply by directing claims against the assuming bank that are encompassed by FIRREA's jurisdictional bar. *See Vill. of Oakwood*, 539 F.3d at 386 ("Permitting claimants to avoid the provisions of (d)(6) and (d)(13) by bringing claims against the *assuming bank* . . . would encourage the very litigation that FIRREA aimed to avoid." (emphasis added) (internal quotations, alterations, and citations omitted)).

That is precisely what plaintiffs have attempted here in suing only defendants.

In addition to the Sixth Circuit, several other federal courts similarly have held that plaintiffs cannot evade FIRREA's mandatory exhaustion requirement simply by naming the acquiring bank as a defendant in the suit for acts or omissions that relate to the failed institution. *See Am. First Fed.*, *Inc. v. Lake Forest Park, Inc.*, 198 F.3d 1259, 1263 n. 3 (11th Cir. 1999) ("AFF, having purchased the note from the RTC, stands in the shoes of the RTC and acquires its protected status under FIRREA. . . .Thus, if Lake Forest is barred [by Section 1821(d)] from asserting this claim against the RTC, it is similarly barred from asserting it against AFF.") (citations

6

omitted);[6] *see also McCarthy v. FDIC,* 348 F.3d 1075, 1079 (9th Cir. 2003) ("hold[ing] that the § 1821(d) jurisdictional bar is not limited to claims by 'creditors,' but extends to all claims and actions against, and actions seeking a determination of rights with respect to, the assets of failed financial institutions for which the FDIC serves as receiver."); *see also Am. Nat'l Ins. Co. v. JPMorgan Chase & Co.*, 705 F. Supp. 2d 17, 21 (D.D.C. Apr. 13, 2010) (dismissing claims against both the FDIC and the successor bank, JPMorgan Chase, for failure to exhaust administrative remedies under FIRREA because claims against JPMorgan Chase directly relate to acts of the FDIC, and, thus, plaintiffs are bound by FIRREA's administrative exhaustion requirement even with regard to claims against the acquiring entity).

Furthermore, a recent decision by the United States District Court for the Northern District of California is directly on point. The court, in an August 2010 opinion, dismissed two cases against defendant JPMorgan Chase Bank, N.A. as barred for failure to timely exhaust administrative remedies under FIRREA. *See Benson, et al. v. JPMorgan Chase Bank, N.A.*, Nos. C-09-5272 MEJ, C-09-5560 MEJ, 2010 WL 3168390 (N.D. Cal. Aug. 10, 2010) *reconsideration denied*, 2010 WL 4010116 (N.D. Cal. Oct 13, 2010). As in the instant action, defendant JPMorgan Chase moved to dismiss plaintiffs' claims as they related to alleged acts and omissions of WaMu before it failed and was taken over by the FDIC and no claims had been filed with the FDIC pursuant to FIRREA's administrative process. *Id.* at *3. Furthermore, the court confronted plaintiffs' very argument on this issue in the instant action–namely, that FIRREA is designed to protect the FDIC, against which no claims were asserted, and JPMorgan Chase was liable to them as a successor in interest. *Id.* After a thorough examination of FIRREA, including the language of 12 U.S.C. § 1821(d)(13)(D), the court rejected the plaintiffs' argument that FIRREA did not apply to them because they had brought claims against only JPMorgan Chase, as a successor in interest, and not the FDIC. Specifically, the court explained:

> The plain language of FIRREA broadly applies to (a) "any claim relating to any act" of the failed bank or the FDIC as receiver for such institution," *even if the FDIC and failed bank are not named as defendants*; and (b) any "action seeking a determination of rights with respect to[ ] the assets of any depository institution for which the Corporation has been appointed receiver," even if the assets are no longer in the possession of the FDIC. 12 U.S.C. § 1821(d)(13)(D). Accordingly, courts have consistently held that the plain language of § 1821(d) (13)(D) bars claims "relating" to the acts of the receiver or seeking the assets of the failed bank, even when those claims are asserted against the third-party purchaser of failed-bank assets from the receiver.

*Benson*, 2010 WL 3168390, at *6 (emphasis added) (quotations and omissions in original text) (citing *Vill. of Oakwood v. State Bank & Trust Co.,* 539 F. 3d at 386; *DiSibio v. Mission Nat'l Bank,* 127 F. App'x 950, 951 (9th Cir. 2005); *Am. First Fed., Inc. v. Lake Forest Park, Inc.,* 198 F.3d 1259, 1263 n. 3 (11th Cir.

---

[6] The RTC ceased operations on December 31, 1995 and was succeeded by the FDIC. *See Carlyle Towers*, 170 F.3d at 307 n.3.

7

1999)).[7]

The Court agrees with the well-reasoned analysis in *Benson* and the other federal courts noted above. Accordingly, the Court concludes that plaintiffs' claims are governed by FIRREA, irrespective of whether their suit is directed against WaMu, the FDIC or defendants, and thus, the Court is deprived of jurisdiction.

Despite plaintiffs' contention to the contrary, this holding is also consistent with the Second Circuit and other courts that have considered the purpose of FIRREA. *See Bank of New York v. First Millenium Inc.*, 607 F.3d 905, 920-21 (2d Cir. 2010) (holding that § 1821(d)(13)(D)(ii), as part of FIRREA's statutory scheme, was "intended to force plaintiffs with claims against failed depository institutions to exhaust administrative remedies before coming to federal court." (citing *Carlyle Towers*, 170 F.3d at 307)); *see also Vill. of Oakwood*, 539 F.3d at 386 (allowing claims against the *assuming bank* "would encourage the very litigation that FIRREA aimed to avoid" by allowing claimants to avoid the provisions of (d)(6) and (d)(13) (emphasis added) (internal quotations and alterations omitted)); *Benson*, 2010 WL 3168390, at *7 (allowing such claims would "thwart FIRREA's purpose and permit creditors to evade the comprehensive administrative claims procedures envisioned by the statute . . . .") (citing *Vill. of Oakwood*, 519 F. Supp. 2d at 738); *Praxis Props., Inco. v. Colonial Sav. Bank,* 947 F.2d 49, 64 (3d Cir. 1991) (Congress's overriding purpose for requiring exhaustion of administrative procedures was to enable [the Receiver] to dispose of the bulk of claims against failed institutions expeditiously and fairly); *see generally Vernon v. Resolution Trust Corp.*, 907 F.2d 1101, 1109 (11th Cir. 1990) (reasoning that few banks "would enter into purchase and assumption agreements with a federal receiver if the successor banks had to assume the latent claims of unknown magnitude.") The Court agrees that, consistent with the plain language of the statute, plaintiffs cannot evade FIRREA's jurisdictional bar by directing their claims against defendants, as successors in interest, because doing so would encourage the very litigation that FIRREA aimed to avoid.

The Court has considered plaintiffs' additional arguments and finds them to be equally unpersuasive. First, at oral argument plaintiffs cited *Barrentine v. Arkansas-Best Freight System, Inc.*, 450 U.S. 728 (1981) and *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697 (1945) for the proposition that Congress intended that rights under the FLSA cannot be abridged and, thus, the FLSA trumps the FIRREA and all other Congressional statutes. However, neither of those cases involved the FLSA and a conflicting Congressional statute or could reasonably be interpreted to support plaintiffs' argument. Instead, these decisions simply held that claims under the FLSA may not be waived through a collective bargaining agreement between an employer and the workers' union or through a direct agreement

---

[7] Unlike the instant action, in *Benson* the complaint included allegations that misconduct "continued after Chase acquired WaMu in September 2008." The court stated that "even if the Court were to find that the Complaints include stand-alone allegations of post-receivership conduct by Chase, FIRREA still applies "because plaintiffs' claims are predicated on alleged misconduct at WaMu and, thus "relate to" any act or omission of the failed bank under 12 U.S.C. § 1821(d)(13)(D)(ii). *Benson*, 2010 WL 3168390 at *5 (stating that "[t]he phrase 'relating to' has a deliberately broad and sweeping meaning when used by Congress in a statute." (citing *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383-84 (1992))).

8

between an individual worker and the employer. These cases are inapposite to the situation here where Congress clearly has the power to enact a separate statute such as the FIRREA that requires the FLSA claims, in this particular context, to be subjected to an administrative review procedure.

Second, in their papers and at oral argument, plaintiffs cited the class action settlements in *Westerfield, et al. v. Washington Mutual Bank*, Nos. 06-CV-2817 (CBA) (JMA), 08 Civ. 00287 (CBA)(JMA), for the proposition that because the FDIC disallowed claims in prior actions which are factually similar, plaintiffs have "no reason to believe that the FDIC would reach a different conclusion" and, thus, plaintiffs have no obligation to make claims pursuant to FIRREA in the instant action.[8] Plaintiffs provided no case law to support this conclusion. In support of their argument, plaintiffs attached the FDIC's Notice of Disallowance of Claim for plaintiff Westerfield, dated May 5, 2009. (*See* Pls.' Pre-Motion Letter, dated May 19, 2010, Exhibit B, ECF No. 36.) However, rather than support plaintiffs' argument that their claims are exempt from the framework of FIRREA's administrative claims process, it suggests just the opposite.

The Notice of Disallowance provides:

The request to deem the Third Amended Class Action and Collective Action Complaint as the requisite POC for all other opt-in and potential settlement class members is denied because FIRREA requires that *each claimant* seeking a recovery against the FDIC-Receiver exhaust the administrative claims process and this precludes the submission of "class" claims.

(*Id.*) (emphasis added).

By its plain language, the FDIC's determination of one individual's claim does not apply to another individual *within the same action* let alone apply to plaintiffs in a separate action. *See Cassesse v. Washington Mut., Inc.*, 711 F. Supp. 2d 261 (E.D.N.Y. 2010) (finding that a named plaintiff has no power to file an administrative class claim under FIRREA and, therefore, each individual class member is required to exhaust FIRREA's administrative claims process) In any event, the plain language of the statute does not allow a plaintiff to by-pass the mandatory administrative review process in FIRREA simply because a plaintiff has reason to believe that the FDIC will disallow the claim if it were presented.

Finally, to the extent plaintiffs more generally argue that the Court should look beyond the plain language of FIRREA to find jurisdiction, the Court rejects that argument pursuant to the well-settled principles of statutory construction. According to the Supreme Court, "canons of construction are no more than rules of thumb that help courts determine the meaning of legislation, and in interpreting a statute a court should always turn first to one, cardinal canon before all others. "We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there. When the words of a statute are

---

[8] Plaintiffs' counsel represented Westerfield in the settlement action cited and submitted this argument in his pre-motion letter, dated May 19, 2010, pursuant to the Court's Individual Rule III.A, explaining why defendants' proposed motion is likely to be unsuccessful. Plaintiffs' counsel provided only the respective docket numbers for *Westerfield* and not a specific Westlaw citation. This omission is irrelevant to the Court's analysis.

unambiguous, then, this first canon is also the last: judicial inquiry is complete." *Connecticut Nat'l Bank v. Germain,* 503 U.S. 249, 253-54 (1992) (citations and quotation marks omitted); *see also Estate of Barbara Pew v. Cardarelli,* 527 F.3d 25, 30 (2d Cir.2008) ("We first look to the statute's plain meaning; if the language is unambiguous, we will not look farther." (citations and quotation marks omitted)). Consequently, as the Second Circuit has repeatedly emphasized, "[w]hen a statute's language is clear, our only role is to enforce that language according to its terms." *Arciniaga v. Gen. Motors Corp.,* 460 F.3d 231, 236 (2d Cir. 2006), *cert. denied* 2006 U.S. LEXIS 9491 (Dec. 11, 2006) (citations and quotation marks omitted); *see also Green v. City of N.Y.*, 465 F.3d 65, 78 (2d Cir.2006) ("Statutory analysis begins with the text and its plain meaning, if it has one. Only if an attempt to discern the plain meaning fails because the statute is ambiguous, do we resort to canons of construction. If both the plain language and the canons of construction fail to resolve the ambiguity, we turn to the legislative history." (citations and quotation marks omitted)); *Lee v. Bankers Trust Co.,* 166 F.3d 540, 544 (2d Cir. 1999) ("It is axiomatic that the plain meaning of a statute controls its interpretation, and that judicial review must end at the statute's unambiguous terms. Legislative history and other tools of interpretation may be relied upon only if the terms of the statute are ambiguous." (citations omitted)).

Although plaintiffs argue that Congress intended for the FLSA to trump all other Congressional statues and that plaintiffs can somehow opt out of FIRREA's mandatory administrative claims process based upon disallowances provided to other claimants, the Court finds that the plain and unambiguous language of the FLSA and the FIRREA provide no such thing. The plain language of FIRREA simply does not allow the Court to hear plaintiffs' claims. Therefore, the Court should not – and, thus, will not – consult other sources in order to strain the statutory provisions beyond their plain and unambiguous meaning. *See, e.g.*, *U.S. ex rel. Fullington v. Parkway Hosp., Inc.*, 351 B.R. 280, 286 n. 4 (E.D.N.Y. 2006) ("The Supreme Court has emphasized the dangers in courts interpreting statutes by relying on remarks from floor debates or similar comments by lawmakers to discern legislative intent.") (citations omitted).

\*   \*   \*

In sum, the Court concludes that, accepting plaintiffs' allegations as true, the Court has no subject matter jurisdiction over plaintiffs' claims. Plaintiffs' claims clearly constitute claims relating to any act or omission of WaMu as a failed institution under FIRREA, and plaintiffs failed to comply with FIRREA's administrative claims process. Thus, plaintiffs' claims are barred by FIRREA. As noted above, plaintiffs' claims are governed by FIRREA and, thus, plaintiffs cannot circumvent FIRREA's jurisdictional bar by directing their claims against defendants, as successors in interest.

## IV. CONCLUSION

For the foregoing reasons, the Court dismisses the second amended complaint, for lack of subject matter jurisdiction, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: December 15, 2010
Central Islip, New York

\* \* \*

Plaintiffs are represented by Adam T. Klein of Outten & Golden LLP, 3 Park Avenue, New York, NY 10016. Defendants are represented by Anne-Marie Estevez and Samuel L. Shaulson of Morgan, Lewis and Bockius LLP, 101 Park Avenue, New York, NY 10178.